Thank you, Your Honor. Good morning, and may it please the Court. As the Supreme Court has now conclusively held in this very case, the structure of the Consumer Financial Protection Bureau violated the separation of powers. The question now before the Court is, what remedy follows when a governmental enforcement proceeding is tainted from the very outset by a structural separation of powers defect? The CFPB's position is, essentially, Seila Law is entitled to no relief at all. In short, the CFPB asks the Court to allow it to escape any consequence in this action for the constitutional defect in the original issuance of the CID and the filing of this case through two purported ratifications, one by then-Acting Director Mulvaney in 2018 and one subsequent purported ratification by Director Kroeninger in July of this year following the Supreme Court's decision. Counsel, I have a question for you that is somewhat generic. The situation you describe is not unusual in the context of constitutional violations. For example, even when there's a criminal conviction and a constitutional violation, if there's no prejudice, if there's no harm shown, the defendant still isn't entitled to reversal of the conviction. So the fact that there isn't the quashing of this document that you request doesn't necessarily cause a problem. Why shouldn't that general proposition apply here that if no ultimate harm can be shown, that there's no additional remedy required? Well, one, I would submit that there has been an injury, as Justice Thomas pointed out in the dissent in the Supreme Court's decision. There was at least from the outset of the case, and then there's a question of whether that was cured temporarily or not by Acting Director Mulvaney's purported ratification. But a difference here between a criminal case where there's been a deprivation of a constitutional right, a personal right, and this case is here we're dealing with a structural constitutional violation. And the Supreme Court has said on multiple times, including the Lucia case and the Ryder-Clipp case, that where there's a structural constitutional defect and a litigant timely and successfully raises that issue, that litigant is entitled to meaningful relief and a meaningful remedy. Otherwise, there would be no incentive for a litigant to raise those challenges. So let me pose a hypothetical to you. Let's suppose that everything had happened very rapidly, and a new permanent director of the Bureau who could be removed at will had been put in place two weeks after the violation so that none of the arguments about timeliness would apply, none of the arguments about Acting Director would apply. Is it your position that even if that person had ratified or reissued the original requirement for documents, you would not have to comply? Well, I believe, assuming that factual scenario, Judge Graber, it could not be ratified. The new director, under your factual scenario, that is subject to no removal restriction, could not ratify the initial issuance of the CID because, as the Supreme Court laid out in FEC versus NRA Political Victory Fund, for there to be a valid ratification, the principal must have the capacity to have done the act at the time, both at the time the act was initially done and then also at the time of the reported ratification. So under your factual scenario, there could not be a ratification. However, the director in that situation would be able to issue, or would have been able to issue a new CID, and these constitutional issues, I don't think, would arise because, as in this case, the issue was the unlawful removal restriction on the director at the time. And by the way, that is an option for the CFPB now. If they have an Acting Director, I'm sorry, if they have a Permanent Director who is no longer subject to the removal restriction as a result of the Supreme Court's decision in June, it would be able, the agency would be able to issue a new CID. It would no longer be subject to the constitutional challenge that the CID had issued in this case is subject to. However, there may be other grounds to challenge it, but it wouldn't be the constitutional grounds. Can you flesh out your argument a bit more as to why ratification is impossible in the situation? I know you rely on that single sentence in the Supreme Court's 1994 decision, but flesh that out a bit, because I don't find that one single sentence enough to carry the bill through. Help me understand the framework for your argument. Thank you, Judge Wofford. So the issue with ratification, or the very idea behind ratification, is that at the time, whatever the act reportedly being ratified was done, the principal would have had the capacity or authority to do that act. So in this case, issuance of the CID and then subsequent initiation of the enforcement proceedings. So the principal here is the agency itself? Is that how you're conceiving of it? Yes, Judge Wofford. Okay. So then help me understand why couldn't the agency have issued the CID when it did? Well, as a result of the argument we made all along and then the Supreme Court's decision in June, holding that the CFPB was unconstitutionally structured, our position is that it therefore lacked the ability to take the executive actions it did in the issuance and prosecution of the CID. And because of that, because there was a defect with the principal's authority to do the act, ratification plays no role because ratification concerns the correction, correcting the situation where there is an unauthorized agent of the principal or an agent performing acts that it was not actually authorized to do. The principal in that case, assuming it was able to do the act all along, can then ratify the improper acts of its agent if that issue is corrected. But here, and this is consistent in our belief with this Court's decision in Gordon, which at the time there was a presumption that the structure of the CFPB was valid and was not unconstitutional. So there was no issue in that case that we have now. In that case, it was whether the agent of the CFPB could have appropriately acted. So it's a different scenario, and in that case, because there was a presumption that the principal, again the CFPB itself, was authorized to perform the acts at issue in that case, there could be a ratification of Director Cordray's improper acts once he was properly appointed and ratified the defect. So as I understand your primary argument, it is as follows. The SID was not valid at the time, therefore it was ineffective and ratification could not cure it. You just commented on the Ninth Circuit case of Gordon, which dealt with the appointments caused defect. But that case also relied on the D.C. Circuit case of General Election, which is almost identical to the case that we have before us. And further, the Supreme Court in its opinion sort of addressed the argument you're making by indicating, and I'm quoting, if Petitioner's correct in the offending removal provision means the entire agency is unconstitutional and powerless to act, then a remand would be pointless, end quote. In other words, you could win the battle, but perhaps lose the war. How do you get over those arguments? Well, I believe the quote that your Honor read from the Supreme Court's decision had to do with the implications of severance or not. And one of the issues with severance and whether or not the court would have given us the relief that we were seeking at the court level or not is that there's a distinction between whether the agency, once severance occurs, can continue to act prospectively, as opposed to what is the appropriate relief for challenging the propriety of the enforcement action here. And again, the Gordon case, while it did reference the NRA political victory funds standard, it relied on a finding that under the first prong of the test that the agency could act at all times. It was just a defect with the agent, not the principal. So for purposes of this case, it didn't really get to the heart of what the issue is here. And I would just note that to the extent that there was, or this wasn't an issue, if this was not an actual issue for the CFPB, there would be no need for ratification. Either by Acting Director Mulvaney or by Director Hank or now. Because if there was no problem with the initial issuance of the CID, then the CFPB could have continued on enforcing it as is. There would have been no need to go back and try to ratify it. If Judge Zuhar doesn't have any other questions on that topic, could you shift to the secondary argument? Let's assume we're not persuaded on this threshold point. Why then do you think Director Kraninger's ratification is insufficient? As we set forth in our briefing and as the court noted in its order, that has to do with the statute of limitations issue. We're now talking about a CID that was issued over three years ago, almost four years ago. And in this case, under the facts of this case, the CFPB, to the extent it believes, that there was any violation by seal law, they were aware of those and had discovered them way back in February. Let me jump in. Just walk me through the argument, because it starts with the three-year statute of limitations in G1. I can't remember what the actual numbers are of the statutory provision. That provision, of course, just applies to the bringing of an enforcement action, which this is not. Back up and walk me through how you think the statute of limitations even comes into play with respect to trying to bring a petition to compel enforcement of a CID. The argument would be fairly straightforward, from our perspective at least, and it's that the purpose of a CID is to investigate violations that the CFPB is aware of or believes to have occurred. And if the only purpose of the CID, which is the case with CID in this case, the only purpose of that CID is to investigate potential violations with respect to which the statute of limitations had run because the Bureau was aware of them more than three years ago, then there's no legitimate purpose or no valid purpose for the CID. But, counsel, I think the question maybe that I'm having, I think it may be Judge Watford's question or it may be a slight variant on that. The limitations period relates to the bringing of a lawsuit, not to the issuance of an investigative CID. So where do you find a limitation period for an investigative demand for documents? Again, I'll try to rephrase. The position, our position is that if there's no enforcement action that could be brought because the statute has run, the limitation period has expired, then there's no legitimate purpose to the issuance of the CID. And this seems like a chicken and egg problem because until there's been an investigation, how can one know whether there is or is not a violation that can be the subject of an action? I mean, what you're saying is, well, the agency should just bring lawsuits willy-nilly without first investigating because otherwise the statute of limitations might have run, and that seems backwards to me. No, Judge Graber, that's what Your Honor understood. That's not what I intended to say. In this case, and this is not every, the specific facts of this case, we have clear instances showing that the CFPB was aware of the violations it believes they will occur. They submitted court filings laying out the alleged violations which mirrored the same violations that are the subject of the CID in this case. That filing, that court proceeding that was filed in February of 2016, was litigated for almost a year. The clean tell is ultimately dismissed. Then a few weeks later, the CID is issued, reporting to investigate the same violations that were alleged against the law specifically starting in February of 2016. So while it may be true that generally, and I think this is true of the limitations language in the statute itself, it's a discovery rule. Three years from the discovery of the violation. So it's not every case that the CFPB won't be able to go beyond three years. It's going to depend on when the alleged violations were discovered. Here, at this event, it's blank. The alleged violations were known at least as of February of 2016. But counsel, the CID seeks documents from October 2015 through the present. I suppose it's possible your client has continued to violate the law well past whatever the three-year cutoff would be that you're imagining. And so I guess I don't see why, how do you take the position that the CID itself is completely invalid? I just don't see any principle of, I don't see anything in the statute or any principle of law that I'm familiar with that would say that the CID itself is just completely invalid because you think certain time periods of conduct in which your client may have a statute of limitations. Well, I guess, I don't know. I think it would depend how you read the through the present, whether that's through the date of production, which has not and may not ever come, or through the present, meaning the issuance, the date of the issuance of the CID, which in this case was, again, February 2017. But, again, it's, the position we're taking is that it is the factual setting of business as opposed to the general principle because the CFPB is on record alleging, say, a lot of these violations. Let me follow up. I'm sorry to interrupt. Let me follow up, though, on Judge Watford's question. Let's assume for the moment that the Bureau could not now act on Sheila's involvement in the Drexen case, which is really the turning point you're arguing. We set aside the CID? I apologize, Your Honor. You broke up for one second on that. Sorry about that. Assuming for the moment the Bureau could not now act on Sheila's involvement in the Drexen case, give me a good reason why the CID must be set aside now, why the SID must be set aside. If the Bureau can't act for violations related to the Morgan Drexen matter? Yes. It should be set aside because then there's no, no live potential violation that could be brought up. And you're saying that that pending SID from that time has to expire as well? The violations to which it relates and which it's investigated expire. The CFPB could today, as I said earlier, there's a director with no removal restriction. The CFPB could issue a new CID and seeking whatever records it's seeking for whatever period of time it's seeking, that may be subject to certain challenges, this timeliness challenge that we're discussing now, but it's not going to be subject to the constitutional challenge. But if the Bureau believes it has a basis to investigate conduct that it wasn't aware of more than four years ago, that's the mechanism to do it. It's not through this CID, which was issued based on violations that were known at the time it was issued. Counsel, you have used your time, but we asked a lot of questions. So when the time comes, you may have two minutes for rebuttal if you wish. Thank you, Judge Rayburn. And we'll now hear from the government. Hello again, Your Honors. May it please the Court, Kevin Friedel for the CFPB. I want to start where Judge Zuhari started, which is with this Court's decision in Gordon, because Gordon speaks to a lot of the questions the panel's asked and really, we think, controls the only issues left in this case. So just as in Gordon, at the time this action was filed, there was an Article II problem that affected the director's exercises of authority on behalf of the Bureau. And just as in Gordon, that Article II problem was later resolved in Gordon. The director was properly appointed, confirmed by the Senate. Here, of course, the Supreme Court held the removal restriction invalid, made clear that going forward, the Bureau is led by a director, removable at will. Just as in Gordon, the director, after that problem was resolved... Counsel, they say that it's not just as in Gordon, because there, the ability of the agency itself to act was not in question. And all that was at issue in Gordon was maybe a defect in the authority of the agent to do this or that on behalf of the agency. So maybe respond directly to your opponent's reliance on that one sentence in that 1994 Supreme Court case that suggests that the principal itself has to have had the authority back at the time of the original action to have taken that action. Gladly, Your Honor. So the problem at issue here concerned, of course, the director's removability by the president and thus his or her accountability to the president was a problem specific to that officer and his or her exercises of authority did not call... Just as with the Appointments Clause issue in Gordon, it did not call into question the Bureau's authority to pursue investigations, to issue CIDs, to seek to enforce them. The Supreme Court rejected that argument in this case. It rejected Celalah's contention that the invalidity of the removal provision tainted the rest of the statute, rendered the Bureau powerless to act. In the quote that Judge Zahari read on page 2209 of its decision, it said, you know, the provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction. They remain fully operative. Right, but your opponent's position is that until that severance occurred, which obviously didn't occur until much later, until that severance occurred, the agency was unconstitutionally structured and therefore could not take any valid action. Right, they put a lot of emphasis on this word, this structural label. But, which the Supreme Court used in this decision. But nothing in the Supreme Court's analysis actually turned on that label. Instead, the thrust of the Court's reasoning was that this was a problem specific to the director and his or her decisions on behalf of the agency. And as in the sentence I just quoted, the Court emphasized that the invalidity of that provision didn't mean that the rest of the statute was inoperative. It remained operative, had been before. And, you know, for that reason, the fact that Gordon involves an appointments clause issue, whereas this involved the removal protection in the statute, really makes no difference. And another reason we know that is, you look at the Court's reasoning in Gordon, it relied heavily on the D.C. Circuit's decision in FEC v. Legitech, which was not a problem specific to the appointments clause context. There you had actually two congressional members were members of the Federal Election Commission. So two officials from an entirely different branch of government leading an undoubtedly executive agency. The Court recognized this was a serious problem. They called it a structural problem. And it nonetheless found that the FEC's ratification of that enforcement action after it was properly reconstituted provided an adequate remedy for the defendant in that case. And this Court in Gordon, the D.C. Circuit's reasoning in Legitech said it agreed with it, essentially adopted it, and never suggested that there was any sort of meaningful difference between what the D.C. Circuit had called a structural problem there and the appointments clause problem that Gordon faced. If we're going to compare them, I would actually think that an appointments clause problem might be thought of as a more fundamental issue. You have someone exercising the power of the office who, at least in some respects, has not been properly appointed, hasn't been confirmed by the Senate. The director who led the Bureau when this case was filed had, of course, at that point, been properly appointed and confirmed by the Senate. So we think there's no real basis for distinguishing Gordon on those grounds and that it controls the outcome here. I would make one other point about Gordon. Gordon also analyzes the standing issues at stake in this sort of situation, as we described in our brief. Now, say the law here doesn't actually dispute standing. This Court, of course, has an independent obligation to assure itself that it's had jurisdiction throughout this case. And in our view, Gordon controls both this ratification question and the standing issue. I just want to make two quick points about that. First, the fact that Gordon was a sort of normal enforcement action, whereas this is an action to enforce an investigative subpoena, makes no difference in either situation. The Bureau is appearing in court as an executive agency seeking to carry out quintessentially executive function. We're seeking to sort of pursue the executive branch's interests in the enforcement of the laws, including investigating potential violations of those laws. So in terms of standing analysis, there's no distinction between a CID enforcement proceeding and a normal enforcement proceeding, as we had in Gordon. And there's also no difference between the removal issue here and the appointments clause issue that was at stake in Gordon. Counsel, I have a question about the acting director, Mulvaney. In the original briefing, you made the argument that, as an acting director, he was removable at will, even without the Supreme Court's later determination that the tenure provision, the severable tenure provision, was unconstitutional. Is that still your position, and if so, why? That is still our position, and that was consistently the Bureau's position while acting director Mulvaney was heading the Bureau. And our reasoning is essentially that set forward in the OLC opinion that we cite in, I believe it was page 14 of our response brief, which points out that the removal provision by its terms applies to a director, not to an acting director. And there's no reason to think that Congress, when it gave that sort of tenure protection to an official who had been confirmed by the Senate to a five-year term, that they meant that to also apply to an official who was just holding the office temporarily by virtue of designation under the Federal Vacancies Reform Act. Why do you make that assumption? If the director's independence from the president was so important in terms of all of the actions he or she would take in office, why wouldn't Congress have wanted someone serving in a temporary capacity to enjoy that same independence? Well, so there are a few other provisions in that same section of the statute, 12 U.S.C. 5491, that clearly apply to a director, not to an acting director. The director is appointed with advice and consent of the Senate. The director serves a five-year term. So there are other parts of that section, excuse me, that we think plainly were meant to apply to a director, not an acting director, including this tenure protection. And there's no requirement in the statute that the agency, even before the Supreme Court's decision in this case, that the agency had to be headed by an official with for-cause removal protection. So the same section of the statute, for example, contemplates that a director, after his or her term expired, can hold over in that office until a successor is appointed. So to replace a holdover director, the president need only basically pick a replacement. The president wouldn't have to find that a holdover director had engaged in inefficiency, neglect of duty, or malfeasance in office. And we also cite the D.C. Circuit's opinion in Swan v. Clinton, which made a similar finding with respect to the National Credit Union administration, saying a holdover head of that agency wouldn't be protected by tenure protection. But your position is that a holdover director of the CFPB would not enjoy for-cause removal protection? Yes, and that's, again, something that the Bureau consistently argued, including in the PHH case before the D.C. Circuit. Another point I would make here is that... I guess that doesn't make any sense to me. Even the statutory provision you're talking about, Congress said that the holdover director, in essence, could serve until his or her successor was, I think, what is it, appointed? Yeah, basically until confirmation of the successor. And so why, again, I don't understand, why wouldn't Congress have wanted that person throughout whatever period of holdover tenure they're going to enjoy to have the same for-cause removal protection that was so essential to the person doing the job before him? Well, that very provision shows that during a director's holdover tenure, they can be replaced without a finding of inefficiency, neglect of duty, or malfeasance in office. But I would also cite or just make the point that I think that to read into this provision or restriction that I think it's not apparent anyway from the face of the statutory provision, and that the Bureau has never claimed would really turn constitutional avoidance on its head here, we'd be reading into the statute sort of a constitutional problem that is not actually required by its terms. And certainly that the Bureau never claimed, it's obviously not an issue going forward. But I would say even if the court was skeptical of this argument, it doesn't even need to address it because we have Director Kraninger's more recent ratification while she was indisputably removable at will by the President. Well, maybe you can just go into your response to your opponent's argument on that front. The time has basically run on whatever it is you all were trying to address the CID itself, I guess, and I'll avoid it. In our view, the statute of limitation provision in 12 U.S.C. 5564G1 has no application here. This is not, again, not an enforcement action brought to prosecute particular violations of law. We're trying to enforce the CID so we can gather facts that might reveal violations of law by sale of law or by others. And it would really be premature for this court to try to adjudicate sort of fact-specific arguments about when the Bureau might have discovered what violations, particularly when, again, there aren't any specific violations being alleged here. We're seeking to gather facts. And this is something that this court has previously dealt with. I'd offer one citation, which cites a number of other cases. That's a case called EEOC, the Carrick Tribe Housing Authority, which is at 260 F3rd 1071. And what that decision says, broadly quoting an earlier en banc decision by this court, is that a party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it. It actually cites another case called Pacific Maritime Association B. Quinn that specifically dealt with statute of limitations as an argument that a subpoena recipient had raised for why they shouldn't have to comply with that subpoena. And what this court rightly said was that we don't have the facts before us to decide these sorts of issues. The agency doesn't have to take your word for it that any violations they might discover would be time barred, just as a subpoena recipient can't say, I don't have to comply with this subpoena because I've been complying with the law in all respects. Neither the court nor the Bureau has to take their word for that. We're entitled to investigate through valid CIDs, such as the one here. Counsel, if I may, the Bureau in 2016 filed the application in violating the rights of consumers. Why isn't that good enough to start the statute of limitations from that point? What does that do to your case, if anything? Well, the short answer is nothing, Your Honor. We did, in the Morgan-Drexen litigation, we moved to hold Saylo Law in contempt for participating with the defendants there in circumventing the district court's injunctive order. What the district court did in response was say it didn't have enough facts to actually decide that. It ordered limited discovery. Some of that did take place less than the Bureau wanted, but ultimately the issue was never resolved. The Bureau essentially dropped the contempt motion and the case closed. But even if the court were to assume that the Bureau was aware of some violations that took place in 2015, it really wouldn't matter for purposes of this CID. We don't know how long any suspected violations may have continued, or even if they're continuing to this day. And certainly any violations that took place within the past three years, just as a matter of logic, the Bureau could not have discovered those more than three years ago. So this investigation remains ongoing, and it may be that Saylo Law has a statute of limitations defense it wants to raise in the future. I mean, there may be equitable tolling arguments in response, but these are all issues that would depend on what is actually alleged in a hypothetical future enforcement action. Thank you. Do you know anything about the case that was argued yesterday, by any chance? I beg your honor. Is the same issue that we're dealing with here raised there? Essentially, that case involves an enforcement action filed while the Bureau was headed by Director Cordray, initially filed while the Bureau was headed by Director Cordray, subsequently ratified. So we think essentially the same analysis would apply there as applies here. I gather that the biggest difference from a practical standpoint between this case and that one is that the bringing of an enforcement action is governed by that three-year statute of limitations. And of course, if you were forced to start all over again, that might pose a problem. Whereas here, I assume even if we rejected your ratification arguments, you could just reissue the same CID today and just everything would start all over again from square one. But the agency would be in the exact same position, wouldn't it? In a sense, but this CID, as Mr. Bisconti noted, was issued almost four years ago. This panel has already held that it was, at least under the Bureau's statute, it was valid. The only remaining issue is this constitutional one, which we think is now resolved. And just as the D.C. Circuit said in Legitech, really there'd be no point in making the agency go back to square one here. This is something we issued as part of a still ongoing investigation. And the issue is now fully teed up. We would ask the court to go ahead and resolve it. Having to reissue a new CID would merely occasion at least months of further delay, if not more. And in terms of this case... Would it not also limit how far back you can go? If you had to reboot? I don't think so, Your Honor. I don't think so. Because again, I assume you're referring to sort of statute of limitations concerns. And even if the court were to think that certain conduct in 2015, that the Bureau couldn't prosecute such violations now, we still would be entitled to gather information about Saylo Law's conduct going back that far. It might shed light on subsequent developments and still could be relevant to this investigation. If the panel has no further questions, we would ask that it affirm the District Court's judgment enforcing the CID. We would also respectfully request that the panel expressly reinstate its statutory holdings in order to remove any potential ambiguity as to whether they remain the law of the circuit. Thank you. Thank you, counsel. Mr. Bisconti, you have two minutes for rebuttal if you wish to use them. Thank you, Judge Graber. Yes, I'll be brief. Just to touch on a few points. First, my friend's citation to the Legitech case, which was relied heavily on in the Gordon case. That case really provides no protection for the issue, the defect here with the ratification. In Legitech, there was no mention of the NRA Political Victory Fund two-prong test. Instead, the court relied primarily on the Buckley case. In Buckley, the Supreme Court basically applied the de facto validity analysis. There was no discussion of ratification, no discussion of the ability of the agency to act either at the time that the act was done or at the time of the reported ratification. The Legitech case really doesn't have any application here. Further, its reliance on Buckley was subsequently undermined by the Supreme Court's decision in the Ryder case as well as Lucia, which all speak to the need for an appropriate remedy where there's been a timely and successful structural constitutional challenge. Then just the second point I'd like to touch on is the acting directors, whether or not the restriction removal applied to the acting director in this case. As I'm sure the panel is aware, the circuit recently decided this issue in a parallel statutory analysis in the Collins case. In that case, like here, the director had an independent agency. The director was subject to a four-cause removal restriction. The Fifth Circuit determined there that the acting director who was appointed pursuant to the Federal Vacancies Reform Act was subject to the four-cause removal restriction and rendering that his acts subject to the same permanent director. Thank you, counsel. The case just argued is submitted, and we'd like to thank both of you for very helpful arguments in this challenging case. With that, this special session is adjourned. Thank you. This court for this session adjourned.
judges: Graber, Watford, Zouhary